```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
RICKEY BURRELL,                       |
                                      |
              Plaintiffs,             |
                                      |      04 cv 7537 (KMW)(THK)
     -against-                        |            ORDER
                                      |
GEORGE DUNCAN, GREAT MEADOW           |
CORRECTIONAL FACILITY, ELIOT          |
SPITZER, ATTORNEY GENERAL,            |
                                      |
              Defendants.             |
--------------------------------------X
```

KIMBA M. WOOD, U.S.D.J.:

Petitioner Rickey Burrell ("Petitioner") was convicted of robbery in the first and second degrees in New York State Supreme Court. He is currently serving concurrent terms of 12 1/2 to 25 years for first-degree robbery, and 7 1/2 to 15 years for second-degree robbery. Petitioner has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

On January 24, 2006, Magistrate Judge Theodore H. Katz issued a Report and Recommendation ("Report"), recommending that the Court deny the § 2254 petition. Petitioner, who obtained counsel during the pendency of his § 2254 petition, timely filed objections to the Report. For the reasons set forth below, the Court adopts the Report in its entirety.

**I.  Background**

The Report, familiarity with which is assumed, thoroughly recounts the background of this case; the Court repeats the facts here only as necessary.

On October 30, 1994, a Blockbuster Video store in Manhattan was robbed at gunpoint. Monica Dupree ("Dupree"), a store manager who was working at that time, told police that Petitioner had been involved in the robbery as a lookout; she was familiar with Petitioner because she had worked with him in 1994 at a different Blockbuster store. Dupree later identified Petitioner in a line-up. Two weeks after the robbery, police arrested Petitioner and charged him with robbery in the first and second degrees.

Dupree and arresting officer Thomas Frey ("Frey") testified at Petitioner's trial. Dupree testified that she first met Petitioner in April or May of 1994 at a different Blockbuster Video store where she had worked as a customer service representative and Petitioner had worked as a security guard. She testified that she worked with Petitioner two or three additional times,[1] that she spoke with Petitioner, and that she remembered his physical appearance, particularly his height and distinctive nose.

Frey testified that, immediately after the robbery, Dupree provided a statement to him, in which she: (1) described the man who had stood outside the door; (2) told Frey that the man's name was "Rickey"; and (3) told Frey that Rickey had worked as a

---

[1] At trial, Dupree testified that she had worked with Petitioner two or three times prior to the robbery. Before the grand jury, however, Dupree testified that she had met Petitioner only once.

2

security guard at a different Blockbuster Video store.  Frey testified that, after arresting Petitioner, he read Petitioner his Miranda[2] rights, at which point Petitioner declined to answer questions and said that he wanted to speak with a lawyer.  Frey then put Petitioner into a holding area and called Dupree from a desk about twenty-five feet away to arrange for her to view a line-up.  As Frey prepared to fingerprint Petitioner, Petitioner said, "[i]f you have no witnesses, you have no case."  After this exchange, Frey took out a small address book he had seized from Petitioner and began to copy numbers from it on a copy machine about four feet from Petitioner's holding cell.  Petitioner asked Frey what he was doing.  Frey replied, "I am copying your phone numbers to see if I [can] find pretty much the guys that you were with during the robbery."  Petitioner "chuckle[d]" and said, "you can't trace beeper numbers."  Frey said that he could, and Petitioner responded, "you can't trace disconnected beeper numbers."

     The jury returned a guilty verdict on January 8, 1998; Petitioner was sentenced on May 15, 1998.  On April 23, 1999, Petitioner filed a pro se motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10.  In a decision and order dated August 17, 1999, the state court denied Petitioner's motion without a hearing, finding that "sufficient

---

     [2] Miranda v. Arizona, 384 U.S. 436 (1966).

facts appear in the record to permit adequate review on appeal." Petitioner sought and was granted leave to appeal the denial of his § 440.10 motion.

The Appellate Division, First Department, found that each of Petitioner's claims failed on the merits. On September 30, 2003, the New York Court of Appeals denied Petitioner's application for leave to appeal. Petitioner then filed the instant § 2254 petition.

## II. Discussion

Petitioner argues that: (1) the People did not prove his guilt beyond a reasonable doubt; (2) Frey violated his Fifth Amendment rights; and (3) his Sixth Amendment right was violated when counsel failed to make a speedy trial motion. The Court has considered each argument de novo. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. Pro. 72(b).

### A. The People proved their case beyond a reasonable doubt

Petitioner objects to the Report, arguing that Dupree's testimony was unreliable and incredible and that, even if Dupree had correctly identified him as the lookout, there was insufficient evidence to conclude that he acted in concert with the other robbers. Pet.'s Objections 4-5. The Court, however, agrees with the Report's conclusion that a rational jury could have found Petitioner guilty of the essential elements of the crime, beyond a reasonable doubt.

It is primarily the function of the fact finder to assess a witness's credibility. Thompson v. Keohane, 516 U.S. 99, 111 (1995). A reviewing court will presume that a fact finder's assessment of witness credibility is correct, unless a petitioner provides clear and convincing evidence to the contrary. See Cotto v. Herbert, 331 F.3d 217, 233 (2d Cir. 2003); 28 U.S.C. § 2254(e)(1). Here, Petitioner argues that Dupree is not credible because she did not recall details such as whether Petitioner wore glasses, and testified differently before the trial court and the grand jury as to how many times she had met Petitioner before the robbery. Although these apparent inconsistencies are relevant for a jury to consider, they do not provide clear and convincing evidence that Dupree's testimony lacked credibility. The Court cannot find, on these contentions, that it was irrational for the jury to find that Dupree was a credible witness.

The evidence is also sufficient to support the jury's finding that Petitioner "acted in concert" with the other robbers. Although Petitioner's mere presence at the scene of the robbery would not be sufficient to infer that he was a lookout, "other indicia of the elements of the underlying substantive offense including knowledge and intent have been in evidence." United States v. Cruz, 363 F.3d 187, 199 (2d Cir. 2004) (emphasis omitted). Here, evidence at trial included Petitioner's

5

positioning in front of the door, the robbers' knowledge of Blockbuster's practices (which suggests that someone familiar with the store assisted), and Petitioner's post-arrest statements.  This evidence supports an inference that Petitioner acted as a lookout.  The Court therefore adopts the Report's conclusion that the People proved their case beyond a reasonable doubt.

> **B.   Frey did not violate Petitioner's Fifth Amendment rights**

The Court agrees that the evidence supports the conclusion that Petitioner's post-arrest statements were made voluntarily. It is well settled that, where a defendant invokes his right to silence, his right must be "scrupulously honored," and that, where a defendant invokes his right to an attorney, interrogation must cease until counsel is present.  E.g., Edwards v. Arizona, 451 U.S. 477, 485 (1981).  It is equally well settled, however, that a defendant who invokes the Fifth Amendment can subsequently waive that right by reinitiating conversations with the police. See Oregon v. Bradshaw, 462 U.S. 1039, 1044 (1983) (citing Edwards 451 U.S. at 485).

Here, the evidence establishes that Frey ceased questioning Petitioner after Petitioner invoked his rights.  Although Frey scheduled a line-up with Dupree and photocopied Petitioner's address book within Petitioner's line of sight and earshot, these actions do not constitute interrogation and therefore do not

violate the Fifth Amendment.  See, e.g., Rhode Island v. Innis, 446 U.S. 291, 301 (defining interrogation as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect").

Nor does Frey's response to Petitioner's query about what Frey was photocopying violate the Fifth Amendment.  Petitioner argues that Frey's statement was unduly provocative and therefore constituted interrogation.  "[T]he definition of interrogation," however, "can extend only to words or actions on the part of the police officers that they should have known were reasonably likely to elicit an incriminating response."  Id. at 302 (emphasis in original).  The Court adopts the Report's conclusion that Frey did not violate Petitioner's Fifth Amendment rights.[3]

**C.   Counsel's failure to raise a speedy trial claim does not constitute ineffective assistance**

Petitioner argues that his counsel's failure to raise a speedy trial claim under either New York or federal law constitutes ineffective assistance.  The Court disagrees.

---

[3] In any case, because Petitioner reinitiated a conversation with the officer by asking "what are you doing," Petitioner waived his Fifth Amendment rights.  See Bradshaw, 462 U.S. at 1045-46 (finding that a defendant's inquiry relating directly or indirectly to the investigation evinces a willingness to discuss the investigation).

The standard for an ineffective-assistance-of-counsel claim is well settled: to prevail, a defendant must show that his counsel's representation fell below an objective standard of reasonableness that resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To establish prejudice, Petitioner must show that there is a reasonable probability that, but for counsel's objectively unreasonable errors, the result of the proceeding would have been different. Id. at 694. Here, Petitioner's counsel was not ineffective; had he filed any motion under either New York or federal law, the motion would have been meritless. E.g., United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999), cert. denied, 531 U.S. 811 (2000) ("Failure to make a meritless argument does not amount to ineffective assistance.").

New York law requires that the People be ready for trial within "six months of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a felony." N.Y. Crim. Proc. § 30.30(1)(a) (McKinney 2007). New York does not, however, require that a trial occur within that timeframe. Smith v. Maher, 468 F. Supp. 2d 466, 470 (W.D.N.Y. 2006). When a claim of ineffective assistance based upon N.Y. Crim. Proc. § 30.30(1)(a) is presented to the Appellate Division and denied on its merits, "the federal court would be bound by the decision of the Appellate Division -- even if it was erroneous -- on the merits of the New York

statutory speedy trial issue since that is purely a question of state law." <u>Parron v. Quick</u>, 869 F.2d 87, 90 (2d Cir.), Cert. denied, 493 U.S. 860 (1989).  The Court therefore accepts the Report's conclusion that Petitioner's state speedy trial claim would have been meritless.

Under federal law, a court considering a speedy trial claim must balance: "the length of delay, the reason for delay, the defendant's assertion of his right, and prejudice to the defendant." <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972).  It is immaterial that Petitioner did not make a speedy trial argument at trial, because his counsel's failure to do so is the basis for his ineffectiveness claim.

Here, the Court agrees with the Report that Petitioner's federal speedy trial claim fails.  The thirty-six month delay between Petitioner's initial indictment and the trial is not <u>per se</u> unconstitutional; it is, in fact, shorter than delays in cases in which the Second Circuit has found no speedy trial violation. <u>E.g.</u>, <u>Flowers v. Somers</u>, 853 F.2d 131, 133 (2d Cir. 1988) (finding no speedy trial violation where there was a 17-month delay, and collecting cases).  Only five months of the time that elapsed between Petitioner's initial indictment and his trial is unexplained.  There is no evidence that the People proceeded in bad faith or deliberately delayed Petitioner's trial.  Instead,

it appears that the delay was solely bureaucratic,[4] which weighs less heavily against the prosecution than do deliberate delays. See United States v. McGrath, 622 F.2d 36, 41 (2d Cir. 1980).

    Petitioner's only argument under the prejudice prong is that he was incarcerated for approximately five months during the delay.  Five months of incarceration is shorter than periods of incarceration that courts have deemed constitutional.  See, e.g., Barker 407 U.S. at 534 (finding that 10 months of pre-trial incarceration was insufficient to show prejudice); United States v. Anderson, 902 F.2d 1105, 1110 (2d Cir. 1990) (finding 8 months in prison was not prejudicial under Barker), Flowers, 853 F.2d at 133-34 (although 17 months of pre-trial incarceration caused significant hardship, it was insufficient to establish constitutional violation).

    Even if Petitioner could show that his counsel's failure to raise a speedy trial claim was objectively unreasonable, his claim would not satisfy the second prong of Strickland.  Nothing suggests that a speedy trial motion would have changed the outcome of the proceeding.

---

[4] Petitioner was indicted in November 1994; the indictment was dismissed on March 2, 1995.  On February 11, 1997, the New York Appellate Division reinstated Petitioner's indictment.  The New York Supreme Court, however, did not receive the Appellate Division's order reinstating the indictment for approximately five months.  There is no evidence that the People played any role in this unexplained delay.

### III. Conclusion

Accordingly, after careful consideration and <u>de novo</u> review, the Court adopts Magistrate Judge Katz's thorough and well-reasoned Report and denies Petitioner's § 2254 petition. Because Petitioner has not "made a substantial showing of a denial of a constitutional right, this Court will not grant a certificate of appealability." 28 U.S.C. § 2253 (c)(2). The Clerk of Court is directed to close this case. Any pending motions are moot.

    SO ORDERED.

Dated:    New York, New York
            August 7, 2007

                                        Kimba M. Wood
                                  United States District Judge

11